**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Admiral Insurance Company, | No. CV-14-08152-PCT-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Community Insurance Group SPC Limited, | |
| Defendant. | |

Defendant Community Insurance Group SPC Limited (CIG) has filed a motion for attorneys' fees and non-taxable expenses pursuant to Local Rule 54.2 and A.R.S. §§ 12-341 and 12-341.01. Doc. 199. The motion is fully briefed, and neither party has requested oral argument. The Court will grant the motion in part.

**I.    Background.**

This case involved a dispute over insurance coverage for a physician, Dr. Anthony Schwartz, who was sued for medical negligence. Dr. Schwartz had a professional liability policy through Plaintiff Admiral Insurance Company ("Admiral"). Dr. Schwartz was employed by the Bullhead City Clinic (the "Clinic"), and the Clinic had its own liability policy through Defendant Community Insurance Group SPC Limited ("CIG"). Admiral filed this action against CIG on August 14, 2014, seeking equitable contribution for payments it made on behalf of Dr. Schwartz. Doc. 1.

CIG filed motions to dismiss (Doc. 12), to file a sur-reply (Doc. 32), and to strike (Doc. 36), which were denied (Doc. 37). CIG then filed a motion for reconsideration

(Doc. 42), which was also denied (Doc. 51). Following discovery, the parties briefed extensive cross-motions for summary judgment. Docs. 121, 122, 128, 129, 130, 148, 149, 150, 153, 154, 155. On August 26, 2016, the Court held a conference with the parties and directed that the motions be briefed in a more focused manner. Doc. 160. All pending motions were denied, and the parties filed simultaneous cross-motions for summary judgment and simultaneous responses. Docs. 189, 190, 191, 192, 193, 194, 195, 196. On November 22, 2016, the Court entered judgment in favor of CIG and against Admiral. The Court concluded that the Clinic policy provided excess coverage and did not trigger the Admiral Policy's "other insurance" clause. Doc. 197.

On December 6, 2016, CIG filed this motion for attorneys' fees, seeking $256,376.41. Doc. 199. The request includes "attorneys' fees through the summary judgment ruling, for its computerized research expenses, and for fifteen hours of attorney time for preparing this fee application." *Id.* at 11. CIG also seeks non-taxable expenses of $39,407.36, in addition to taxable costs listed in the Bill of Costs filed separately. *Id.*

**II.     Legal Standard.**

Under Arizona law, "[i]n any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees." A.R.S. § 12-341.01(A). The trial court has discretion regarding such an award. *See Wilcox v. Waldman,* 744 P.2d 444, 450 (Ariz. Ct. App. 1987). Courts consider: (1) the merits of the unsuccessful party's claim, (2) whether the successful party's efforts were completely superfluous in achieving the ultimate result, (3) whether assessing fees against the unsuccessful party would cause extreme hardship, (4) whether the successful party prevailed with respect to all relief sought, (5) whether the legal question presented was novel or had been previously adjudicated, and (6) whether a fee award would discourage other parties with tenable claims from litigating. *Am. Const. Corp. v. Philadelphia Indem. Ins. Co.*, 667 F. Supp. 2d 1100, 1106-07 (D. Ariz. 2009) (citing *Assoc. Indem. Corp. v. Warner*, 694 P.2d 1181, 1184 (Ariz. 1985)). No single factor is determinative.

*See Velarde v. PACE Membership Warehouse, Inc.*, 105 F.3d 1313, 1319-20 (9th Cir. 1997).[1]

### III. Analysis.

This case arose out of contract. *See* Docs. 199, 201; *see also Cal. Cas. Ins. Co. v. Am. Family Mut. Ins. Co.*, 94 P.3d 616, 622 (Ariz. Ct. App. 2004) (affirming award of attorneys' fees pursuant to A.R.S. § 12-3451.01 for equitable contribution). Accordingly, the Court will determine whether fees should be awarded by turning to the factors in *Associated Indemnity*, 694 P.2d at 1184.

### A. Merits of the Claims.

The Admiral Policy undisputedly provided primary coverage for Dr. Schwartz, and the Clinic paid approximately $250,000 in premiums to Admiral for that coverage. Furthermore, Admiral was provided with an insurance certificate prior to litigation demonstrating that the CIG policy provided excess coverage to Dr. Schwartz. Admiral argues that its claims were not without merit because it survived both a motion to dismiss and a motion for reconsideration. Doc. 201 at 7. But the fact that Admiral was able to state a claim does not mean that the claim had merit. When facts from both sides were considered, Admiral lost at summary judgment. This factor favors CIG's request for attorneys' fees.

### B. Litigation could have been avoided.

Admiral brought this action. The parties engaged in attempts at private mediation and settlement, but all attempts failed. Admiral argues that CIG prolonged the litigation by failing to turn over the CIG Policy, a point which has some merit. But no settlement was reached even after the CIG Policy was disclosed. The Court concludes that CIG's actions were not superfluous in achieving the ultimate result; they were necessary to obtain relief against Admiral's claims. The second factor weighs in favor of granting attorneys' fees to CIG.

---

[1] This case has been administratively closed and Plaintiffs have appealed (Doc. 203), but the Court retains jurisdiction to issue an award of attorneys' fees. *See Masalosalo v. Stonewall Ins. Co.*, 718 F.2d 955, 957 (9th Cir. 1983).

**C.   Extreme Hardship.**

CIG argues that assessing fees against Admiral would not cause extreme hardship because Admiral is a large insurance company which "had no difficulty or hesitation initiating and maintaining this costly litigation, which has lasted more than two years." Doc. 199 at 7.  Admiral does not dispute this.  This factor weighs in CIG's favor.

**D.   Extent of Victory and Difficulty of the Case.**

CIG prevailed on all the claims.  Contrary to Admiral's argument, the legal issues were not particularly difficult or novel, and CIG was forced to litigate the case through discovery to the summary judgment stage.  These factors favor an award of fees.

**E.   Whether an Award Would Discourage Litigation.**

CIG argues that an award will not chill litigation because Admiral had no legitimate claims.  Admiral does not respond on this issue.  This factor does not weigh against a fee award.

**F.   Reasonableness.**

In analyzing whether attorneys' fees are reasonable, the Court looks to whether the hourly rate is reasonable and whether the hours expended are reasonable. *Schweiger v. China Doll Rest., Inc.*, 673 P.2d 927, 931-32 (Ariz. Ct. App. 1983).  Generally, the prevailing party is "entitled to recover a reasonable attorneys' fee for every item of service which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest[.]"  *Id.* at 932.  "Once a party establishes its entitlement to fees and meets the minimum requirements in its application and affidavit for fees, the burden shifts to the party opposing the fee award to demonstrate the impropriety or unreasonableness of the requested fees."  *Nolan v. Starlight Pines Homeowners Ass'n*, 167 P.3d 1277, 1286 (Ariz. Ct. App. 2007); *Assyia v. State Farm Mut. Auto. Ins. Co.*, 273 P.3d 668, 675 (Ariz. Ct. App. 2012).

CIG submitted a declaration regarding counsels' experience, expertise, and fee rates, which counsel attests is below the normal market rate.  Doc. 199-1.  Lead litigation attorney Roopali Desai has been a trial attorney since 2006, and charged $325 per hour.

*Id.*, ¶¶ 1-7. Lead attorney Kathy Steadman has been a trial attorney since 1990, and charged $350. *Id.*, ¶ 8. Associate Mel Soliz and Katherine DeStefano graduated from law school in 2011 and 2007 respectively, and had hourly billing rates of $200 and $215. *Id.*, ¶ 9. Three paralegals worked on this case and billed out at $150 and $75 per hour based on experience. *Id.*, ¶ 10. The declaration includes a spreadsheet detailing the time spent on each specific task. Doc. 199-2, Ex. 1. In total, counsel spent nearly 1040 hours on this case over a two year period, which amounts to more than $244,000 in hourly attorneys' fees. *Id.* at 62. Additionally, counsel billed $6,966.41 on electronic research (*Id.* at 63) and $4,875 for the time spent preparing this fee application (Doc. 199 at 11; Doc. 209 at 10). In total, CIG seeks $256,376.41 in attorneys' fees. *Id.*

Because CIG submitted an itemized list of the work done and fees incurred in this case, the burden shifts to Admiral to show that the fees are unreasonable. Admiral disputes the reasonableness of the fees, arguing that:

> (1) the hourly rates of [CIG's] counsel are unreasonably high and are not in accordance with the prevailing rates of the Phoenix, Arizona market for attorneys of the same experience;
>
> (2) the amount of hours expended by [CIG's] attorneys on this litigation were not reasonable, as they included duplication of efforts and excessive time devoted to research and briefing given the limited issues of the case; and
>
> (3) [CIG's] Westlaw charges and other costs including meals and expedited services should be excluded or significantly reduced as unnecessary and excessive costs.

Doc. 201 at 2.

As to hourly billing rates, Admiral presents no evidence that the rates charged by CIG are unreasonable for lawyers with similar qualifications in Phoenix, Arizona. Nor has Admiral's counsel offered their own billing rates as a comparison. What is more, Arizona courts have stated that "in corporate and commercial litigation between fee-paying clients, there is no need to determine the reasonable hourly rate prevailing in the community for similar work because the rate charged by the lawyer to the client is the best indication of what is reasonable under the circumstances of the particular case."

*Schweiger*, 673 P.2d at 931-32.  CIG submitted the fee agreement between CIG and its counsel confirming the rates billed to CIG.  Doc. 199-1 at 7.  Accordingly, the Court finds that CIG's counsels' hourly billing rates are reasonable.

Admiral also argues that CIG's counsel used an unreasonable number of attorneys on this matter.  Doc. 201 at 4.  CIG's counsel used four total attorneys on this matter, and the fourth became involved only after one attorney went on maternity leave.  Doc. 209 at 7.  Admiral itself lists three attorneys on the caption of its response brief.  *See* Doc. 201.  Admiral has not shown CIG's staffing to be unreasonable.

Admiral next challenges the number of hours billed by CIG's counsel.  *Id.* at 4-5.  Specifically, Admiral argues that "the excessive briefing and motion writing campaign of [CIG] unnecessarily caused a sharp increase in fees incurred by both parties."  *Id.*  Admiral even quotes the Court's August 9, 2016 order, which stated "the briefing and lawyering in this case appears to be far out of proportion to what is at stake."  *Id.*

On this point, the Court agrees.  The Court believes that the motion to reconsider and motion to strike were unnecessary, as was much of the effort on the first motion for summary judgment and much of the effort spent on discovery.  Both sides over-litigated this case.  Because the Court is unable with precision to separate out fees attributable to specific motions and excessive work, the Court will reduce the fees by 30%.  *Shaft v. Soc. Sec. Admin. Com'r*, No. CV-13-08206-PCT-DGC, 2014 WL 3809097, at *1 (D. Ariz. Aug. 1, 2014) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (holding that fees that are excessive, redundant, or otherwise unnecessary should be excluded from a fee request)).

Admiral argues that "CIG's Westlaw research costs . . . should be excluded."  Doc. 201 at 6.  The Arizona Supreme Court permits recovery of computerized research expenses as an element of an award of attorneys' fees under A.R.S. § 12-341.01.  *See Ahwatukee Custom Estates Mgmt. Ass'n, Inc. v. Bach*, 973 P.2d 106, 109 (1999).  Admiral provides no support to show the amount of research conducted by CIG was

excessive. The Court will reduce CIG's computerized research costs by the same 30% as all other attorneys' fees.

**G.     Non-Taxable Costs under A.R.S. § 12-341.**

CIG seeks non-taxable expenses in the amount of $39,407.36, in addition to the taxable costs set forth in the Bill of Costs (Doc. 200). Doc. 199 at 10. Admiral's only objections to the non-taxable expenses relate to overnight delivery charges and meals. Doc. 201 at 6. The Court agrees with this objection and will reduce the requested expenses by $256.13. *See* Doc. 199-3, Ex. 2 at 2. The Court will award $39,151.23.

**IT IS ORDERED** that Defendant's motion for attorneys' fees and non-taxable expenses (Doc. 199) is **granted in part and denied in part**. Plaintiff is awarded $182,875.99[2] in attorneys' fees and $39,151.23 in non-taxable expenses against Plaintiff.

Dated this 23rd day of February, 2017.

_____
David G. Campbell
United States District Judge

---

[2] (requested fees for litigation) + (requested fees for this motion) = (total requested fees) * (30% reduction) = total fees to be awarded

$256,376.41 + $4875 = $261,251.41 * 0.7 = $182,875.99

- 7 -